UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

Case No. 13-7708

UNITED STATES OF AMERICA,

    Appellee,

v.

FARES ABULABAN

    Appellant,
_____/

**PETITION FOR CERTIFICATE OF APPEALABILITY ON DENIAL OF MOTION TO VACATE OR CORRECT SENTENCE PURSUANT TO § 2254**

Pursuant to Fourth Circuit Local Rule 22(a)(1)(A), Appellant Fares Abulaban, through undersigned counsel, petitions the court to issue a Certificate of Appealability (COA) on the denial of his habeas petition by the district court. Specifically, and as required by the rule, Abulaban indicates below (1) what issues he seeks a certificate to appeal, and (2) the reasons such a certificate should issue.

**I. Procedural Background**

Abulaban was charged in the Eastern District of Virginia with conspiracy to possess with intent to distribute ecstasy, conspiracy to possess with intent to distribute cocaine and possession of a firearm in furtherance of a drug trafficking crime. Abulaban pled guilty to each charge on July 12, 2008,

and the district court sentenced Abulaban to 232 months in prison. Abulaban appealed to the Fourth Circuit, which affirmed the judgment in an unpublished decision on March 22, 2010. <u>US v. Young</u>, 371 Fed. Appx. 358 (4th Cir. 2010). Attorney Marvin Miller represented Abulaban for both the plea and the appeal.

On June 22, 2011, Abulaban filed a habeas petition, which the district court denied on August 20, 2013. Abulaban timely filed a notice of appeal on October 18, 2013, and the district court issued an order denying a COA.

**II.  Issues for which Appeal Sought**

Abulaban seeks a COA on the following issues:

1. Whether Abulaban's counsel provided constitutionally ineffective assistance when he advised Abulaban to plead guilty to conspiring to distribute ecstasy and possessing a gun in furtherance of a drug crime despite the fact that Abulaban did not understand English well enough to comprehend the charges, the government's burdens of proof or the plea colloquy, and despite the fact that there was no certified translator during the plea proceedings to assure Abulaban's comprehension?

2. Whether Abulaban's counsel provided constitutionally ineffective assistance when he failed to interview witnesses provided by Abulaban that would contradict the government's contentions that his firearm was possessed in furtherance of drug trafficking and that he was an established and seasoned drug dealer?

3. Whether there was sufficient evidence to convict Abulaban under 18 U.S.C. § 924(c)(1)(A)(i) for possessing a firearm in furtherance of a drug trafficking crime?

4. Whether Abulaban's due process rights were violated by the government's use of sentence entrapment to increase Abulaban's sentencing exposure for conspiring to distribute cocaine?

**III. Reason Why COA Should Issue**

A. Standard

For a COA to issue, a prisoner appellant must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by "show[ing] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (quoting Slack v. McDaniel, 529 U. S. 473, 484 (2000))(internal quotations removed). The court should reach its conclusion without considering the viability of Abulaban's habeas petition: "a court of appeals should not decline the application for a COA merely because it believes the applicant will not demonstrate an entitlement to relief." Id. at 337.

B. Arguments on each Issue

**1. Abulaban's counsel provided constitutionally ineffective assistance when he advised Abulaban to plead guilty to conspiring to distribute ecstasy and possessing a gun in furtherance of a drug crime despite the fact that Abulaban did not understand English well enough to comprehend the charges, the government's burdens of proof or the plea colloquy, and**

3

**despite the fact that there was no certified translator during the plea proceedings to assure Abulaban's comprehension**

a. Claim and Standard

Abulaban's counsel, Marvin Miller, provided ineffective assistance in violation of the Sixth Amendment when he advised Abulaban to plead guilty to conspiring to distribute ecstasy and possessing a firearm in furtherance of drug trafficking. Generally, to establish a claim of ineffective assistance of counsel, a petitioner must demonstrate (1) that his counsel's conduct fell below an objective standard of reasonableness and (2) that, but for the errors, the result of the proceeding would be different.   Strickland v. Washington, 466 US 668 (1984).

The circumstances of Abulaban's case dictate a slight adjustment to the typical ineffective-assistance analysis. First, the second element of the standard is modified because Abulaban pled guilty.  Abulaban must show that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 58-59 (1985).  Second, because counsel's errors affected Abulaban's understanding of the plea he was entering, any examination of ineffective assistance is closely linked with the voluntariness of Abulaban's resulting plea.

b.  Counsel's Performance was Defective

4

Miller's representation was constitutionally defective because he advised Abulaban to plead guilty although Abulaban did not understand the charges or the governments' burden of proof as to each charge. Abulaban has submitted an affidavit detailing his level of comprehension during the plea. In it, Abulaban attests that he has a limited understanding of English. Abulban Affidavit, 5/29/2012, ¶4. He attests further that, during the colloquy, he merely answered questions as Miller directed him to, id. at ¶ 6 & 18, with no greater understanding of the proceedings. And, Miller never told him the elements of the charges he was pleading to, or the government's burden of proof. Id. at ¶ 16. Lastly, Miller, himself, acknowledges that he grossly miscalculated Abulaban's sentence exposure.

c. Miller's Defective Performance Led to an Involuntary Plea

If Abulaban had known of the government's burden and the elements of each charge he would not have pled guilty. Id. at ¶ 17. It is, therefore, because of Miller's defective representation, that Abulaban pled guilty. And, because Miller's defective performance directly concerned Abulaban's understanding of the charges against him, one is compelled to question whether Abulaban entered a voluntary and knowing plea.

The longstanding test for determining the validity of a guilty plea is "whether the plea represents a voluntary and

5

intelligent choice among the alternative courses of action open to the defendant." Hill v. Lockhart, 474 US 52, 56 (1985). "It is axiomatic that, to be constitutionally valid, a plea of guilty must be knowingly and voluntarily made. And a guilty plea is not knowingly and voluntarily made when the defendant has been misinformed as to a crucial aspect of his case." US v. Fisher, 711 F.3d 460, 462 (4th Cir. 2013) (internal citations omitted). Abulaban was misinformed – indeed uninformed – about the charges to which he was pleading and what the government needed to prove as to each. These are clearly crucial aspects of his case, and his decision to plead guilty could not have been a voluntary and intelligent choice in the absence of their apprehension.

d. The District Court Incorrectly Treated Involuntary Plea as Curative of Attorney Error

The district court relied heavily on the plea and plea colloquy to determine that no prejudice resulted from Miller's ineffective assistance. While statements made under oath in a Rule 11 plea colloquy carry a strong presumption of validity, they may be overcome in extraordinary circumstances. US v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005). Extraordinary circumstances exist here. Abulaban has attested that he did not understand enough English to comprehend the proceedings. Abulaban Affidavit, 5/29/2012, at ¶¶ 4, 6, & 18. Abulaban's

6

attestations are corroborated by the plea colloquy transcript, which demonstrates numerous instances where Abulaban and his attorney had off-the-record exchanges before Abulaban answered the court's questions. Lastly, the district court did not engage the services of a certified translator during the colloquy, which could have resolved any issues that Abulaban did not understand and guaranteed a valid Rule 11 colloquy.

In sum, the district court erred in relying on the plea and its colloquy as a universal curative. A defective plea – involuntary and unknowing – cannot cure those defects in an attorney's performance that resulted in the plea being defective. And similarly, when the plea's defects concern Abulaban's ability to understand English and comprehend the colloquy, the colloquy cannot cure the defects that led to the plea being defective.

e. Court Should Issue a COA on Abulaban's First Claim

Reasonable jurists would debate whether counsel was constitutionally defective in advising Abulaban to plead guilty when Abulaban doesn't speak English well enough to understand the plea colloquy or the nature of the charges against him. Reasonable jurists would also debate whether the district court erred in finding the plea and its colloquy curative where counsel's errors rendered the plea involuntary and there was no

7

certified translator at the plea colloquy to assure the court of his understanding. As such, the court should grant a COA on Abulaban's first issue.

**2. Abulaban's counsel provided constitutionally ineffective assistance when he failed to interview witnesses provided by Abulaban that would contradict the government's contentions that his firearm was possessed in furtherance of drug trafficking and that he was an established and seasoned drug dealer**

a.  Claim and Standard

Abulaban's counsel provided ineffective assistance in violation of the Sixth Amendment when he failed to interview numerous witnesses identified by Abulaban. Under the Strickland ineffective-assistance standard as modified by Hill, Abulaban must prove that his counsel's performance fell below an objective performance and that, but for that performance, Abulaban would have insisted on going to trial. Hill, 474 US at 58-59.

b.  Counsel's Performance was Defective

In his habeas petition, Abulaban identified eight witnesses that he told Miller to interview. These witnesses could have testified to the fact that Abulaban needed hand-outs from his family and friends to survive; that he was a 'blowhard' who drove around in his relatives' cars pretending they were his; that as a blowhard he pretended to be a 'big-shot' and other

8

things he was not; that they never saw him, or knew him to, deal drugs; and that they never saw him with a firearm.

The government's case was built on the observations of its confidential informant and undercover agents and recorded conversations among its confidential informant, undercover agents and Abulaban. This evidence seemingly portrayed Abulaban as an experienced, high-level drug broker. Abulaban's counsel was constitutionally ineffective for failing to interview witnesses who could refute and explain seemingly damning evidence. For example, agents note that, despite his modest means, Abulaban used a Cadillac to drive agents to a meeting. The implication is, of course, that Abulaban had assets beyond what was apparent. In the face of this, any reasonably competent attorney would have interviewed witnesses that – he was told – could confirm that the Cadillac was not Abulaban's: "Counsel in criminal cases are charged with the responsibility of conducting appropriate investigations, both factual and legal, to determine if matters of defense can be developed." U.S. v. Money, 497 F.3d 397, 404 (4th Cir. 2007).

c.  Miller's Failure to Interview Led to a Rush to Plea

Miller's lack of due diligence resulted in no evidence to dispute the government's contentions and a rush to enter a plea. This rush left obvious arguments undeveloped or substantiated.

9

To take one example, which will be elaborated upon in subsection III.B.3 of this petition, Abulaban's conviction under § 924 for possessing a firearm in furtherance of a drug trafficking crime requires some evidence that the firearm's possession furthered a drug trafficking offense. A common mechanism of meeting this requirement is to show that a defendant at some point brandished the firearm, from which, possession of the firearm to protect drug-trafficking product or territory is inferred. A number of the witnesses Abulaban directed his counsel to interview could have testified that, in more than a decade of knowing Abulaban, they had never seen him brandish a gun. But because counsel did not interview witnesses prior to recommending a plea, Abulaban pled guilty without the benefits of such evidence.

d. Court Should Issue a COA on Abulaban's Second Claim

The district court denied Abulaban's claim that counsel provided ineffective assistance by failing to interview witnesses. The court held that there was "no reason to believe that the testimony of these individuals would have created a reasonable probability that verdicts would have been different." Memorandum Opinion, 8/20/13, p. 10. Reasonable jurists would debate whether Abulaban's counsel rendered ineffective assistance when he failed to interview witnesses who could establish defenses to the charges and contradict the impression

10

of Abulaban's capabilities the government's evidence created. Accordingly, the court should grant a COA on this issue.

**3. There was insufficient evidence to convict Abulaban under § 924(c)(1)(A)(I) for possessing a firearm in furtherance of a drug trafficking crime**

a.  Claim and Standard

Abulaban asserts that there was insufficient evidence to support his conviction, under § 924(c)(1)(A)(i), for possessing a firearm in furtherance of a drug trafficking crime. When examining the sufficiency of evidence, a court must determine whether any reasonable trier of fact could have found that the evidence established the appellants guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979).

b.  Evidence Does Not Support Conviction Under § 924

On February 14, 2008, Abulaban drove agents to a nightclub where a sham drug-transaction was set to occur. After everybody went into the nightclub and agents arrested all the individuals involved, agents searched Abulaban's car. In it, they found a loaded .380 caliber pistol, which became the basis for the government's § 924(c)(1)(A)(i) charge.

Abulaban does not contest his possession of the firearm; indeed, he is the licensed and registered owner of the gun. But more than possession and presence is needed to violate § 924.

11

The presence of the firearm must be more than merely "the result of accident or coincidence." US v. Lipford, 203 F.3d 259, 266 (4th Cir. 2000). Section 924 requires that Abulaban's possession be "in furtherance" of drug trafficking, and the facts do not support such a conclusion.

To determine whether possession of a firearm is "in furtherance" of a drug trafficking offense, a fact finder should consider the various ways a firearm may be used to further a drug crime. US v. Lomax, 293 F.3d 701, 705 (4th Cir. 2002). Some factors to be considered are, "the type of drug activity that is being conducted, accessibility of the firearm, the type of weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." Id. (quoting US v. Ceballos-torres, 218 F.3d 409, 412 (5th Cir. 2000)).

Considering these factors, there was insufficient evidence to find Abulaban's possession to be in furtherance of drug trafficking. The firearm was found in Abulaban's car and was not easily accessible. Compare this to US v. Moore, where the gun was easily accessible as the defendant kept the gun in the waistband of his pants. US v. Moore, No 09-4189, (4th Cir. 2009). Abulaban's gun was a typical handgun, legal and registered. The gun was not near drugs, like in US v. King, 628

12

F.3d 693, 701 (4th Cir. 2011), where the gun was kept on headboard next to drugs. No evidence has been proffered that Abulaban brandished the gun for the purposes of a deterrent – in contrast to the Lomax case where the gun was 'waved around.' US v. Lomax, 293 F.3d 701, 706 (4th Cir. 2002) (ran down street holding gun). No evidence has been proffered that Abulaban dealt drugs while in his car. And no evidence was proffered that Abulaban has carried a gun in the past. In short, in contradistinction to cases where § 924(c)(1)(A) convictions were upheld, no evidence has been presented to meet § 924(c)(1)(A)'s requirements.

c.  District Court Ruling Misread Decision on Appeal

In denying Abulaban's petition, the district court quotes the Court of Appeals' opinion, in which that court held that "to suggest that Judge O'Grady relied on criminal conduct for which Abulaban's guilt was not firmly established borders on the frivolous." The district court then relies on this ruling to find that the Court of Appeals already decided the adequacy of the evidence for the firearm charge. This is not the case. The decision resolved Abulaban's earlier argument that Judge O'Grady was using evidence of other conspiracies in his sentencing determination. The Court of Appeals rejected this argument, but in no way addressed the sufficiency of the firearm charge. The

13

district court also relies on the plea colloquy to cure any issues as to Abulaban's claim. But as has been discussed previously, the plea was not voluntary and so cannot act as a curative.

d.  Court Should Issue COA on Third Claim

Reasonable jurists would disagree with the district courts' decision as to the sufficiency of the evidence for § 924's firearm charge where no facts exist to establish the required nexus between drug trafficking and the firearm and when the district court's ruling relied on (1) a misapprehension that the court of appeals had already ruled on this issue, and (2) an involuntary plea to cure any issues. Accordingly, the court should grant a COA as to this issue.

**4. Abulaban's due process rights were violated by the government's use of sentence entrapment to increase Abulaban's sentencing exposure for conspiring to distribute cocaine**

a.  Claim and Standard

Abulaban's due process rights were violated when the government engaged in sentencing entrapment by coercing him to broker a deal involving quantities of cocaine beyond his predisposition so as to increase his sentencing exposure. "Sentencing entrapment occurs when official [government] conduct leads a defendant predisposed to deal only in small quantities

14

of drugs to deal in larger quantities, leading to an increased sentence." US v. Barth, 990 F.2d 422, 424 (8th Cir. 1993). Admittedly, the Fourth Circuit Court of Appeals has neither adopted nor rejected the doctrine of sentence entrapment. See e.g., U.S. v. Ramos, 462 F3d. 329, 335 (4th Cir. 2006).

b.  Fourth Circuit has Rejected Sentence Manipulation

Before reaching the merits of Abulaban's claim, his claim of sentence entrapment must be distinguished from a claim of sentence manipulation, which the Fourth Circuit has rejected. US v. Jones, 18 F.3d 1145, 1154 (4th Cir. 1994). In Jones, undercover agents had continued to purchase small quantities of drugs from the petitioner after the agents had gathered enough evidence to proceed with an arrest. The court labeled this activity sentence manipulation. Examining the due-process implication, the court asked "whether the government could ever engage in conduct not outrageous enough so as to violate due process to an extent warranting dismissal of the government's prosecution, yet outrageous enough to offend due process to an extent warranting a downward departure with respect to a defendant's sentencing." Jones, 18 F.3d at 1154. Rejecting the idea, the court declined to adopt a rule that would require courts to "speculate as to the motives of, or to ascribe motives to, law enforcement authorities." Id. at 1155.

15

c.  Sentence Entrapment is Distinct From Sentence Manipulation

The Fourth's ruling in Jones, and later in US v. Ramos, 462 F.3d 329, 335 (4th Cir. 2006), illuminates the important distinction between the rejected sentence-manipulation doctrine and the unresolved sentence-entrapment doctrine. While sentence manipulation requires an examination of the agents' motives, the sentence entrapment doctrine looks to the criminal disposition of the defendant. Jones, 18 F.3d at 1154 (adopting the classification of US v. Barth, 990 F.2d 422, 424 (8th Cir. 1993)).

d.  Abulaban was Subjected to Sentence Entrapment

Abulaban's is the prototypical case of sentence entrapment. Agents coerced him into brokering a drug deal beyond his capacity or disposition.

In 2007, the government's confidential informant went to Abulaban seeking help with finding buyers for 100kg of cocaine. Abulaban told the informant that he could not manage that quantity, but that he can arrange buyers for 5kg of cocaine. After repeated attempts to get Abulaban to broker a larger deal, Abulaban agrees to find buyers for 5-10kg. Despite the informant's attempts at persuading Abulaban to broker a larger deal, including reducing the asking price for the cocaine to

16

half of its street value, the informant was only able to secure another 15kg for the deal by negotiating independently with a co-Defendant, Jubal Culver.  In short, it was only after continuous effort that the informant was able to induce Abulaban into brokering a transaction of 20kg.  The nature of the transaction and the fact that there is no evidence of Abulaban engaging in previous drug deals of large quantities indicate that Abulaban was not criminally predisposed to traffic in drug quantities at the level he was convicted of.

e.  District Court Incorrectly Rejected Claim on Narrow Reading

   When addressing his sentence-entrapment claim, the district court just ruled that, as his attorney had argued the issue, his assistance was not ineffective.  Regrettably, Abulaban's pro se petition did label his sentence entrapment claim as one of ineffective assistance.  But a closer review of the petition makes apparent that Abulaban is arguing his counsel is ineffective for allowing sentence entrapment to occur rather than for failing to make an argument.  In short, despite the label, Abulaban was making an argument that his due process rights were violated by the government's sentence entrapment.  The district court should have address the merits of his claim as Abulaban's pro se petition was entitled to a liberal

17

construction. Loe v. Armistead, 582 F.2d 1291, 1295 (4th Cir. 1978).

f.  Court Should Issue a COA on Fourth Claim

Reasonable jurists would disagree over whether the district court erred by failing to liberally construe Abulaban's petition and examine his due process claim of sentence entrapment. Reasonable jurist would also disagree over whether the government's push to induce Abulaban to facilitate the purchase of larger quantities of cocaine was sentencing entrapment such that a downward departure of the sentencing guidelines was warranted. Accordingly, the court should issue a COA as to this issue.

**IV. Conclusion**

Appellant moves for the court to issue a COA on the district court's denial of his habeas petition. First, Abulaban asserts that his counsel provided ineffective assistance when he advised Abulaban to plead guilty to conspiring to distribute ecstasy and possessing a firearm in furtherance of drug trafficking when Abulaban did not understand the charges, the government's burden or the plea colloquy proceedings. Second, Abulaban asserts that his counsel provided ineffective assistance by failing to interview 8 identified witnesses, who

18

could refute key pieces of the government's case, before advising Abulaban to plead guilty.  Third, Abulaban asserts that the court was presented with insufficient evidence to support his conviction under § 924(c)(1)(A) for possessing a firearm in furtherance of drug trafficking.  Lastly, Abulaban asserts that his due-process rights were violated when the government engaged in sentence entrapment by coercing Abulaban to broker a deal involving quantities beyond what he was criminally predisposed to do.

Appellant humbly submits that the district court wrongly decided each of the four issues enumerated above.  To issue a COA, however, this court need not reach such a conclusion; instead, the court need only conclude that reasonable jurists could disagree with the district court's rulings or that the enumerated issues deserve elaboration. As this has been shown, Abulaban respectfully requests that the court issue a COA on the four issues argued in this petition.

                                        Respectfully Submitted

                                        s/John C. Kiyonaga
                                        John C. Kiyonaga, P.C.
                                        108 N. Alfred Street
                                        Alexandria, VA 22314
                                        Phone (703) 739-0009
                                        Fax   (703) 549-2988

CERTIFICATE OF SERVICE

I certify that on December 20, 2013, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

s/ John C. Kiyonaga                                         12/20/2013
John C. Kiyonaga